5✓

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

Shaka L. Zulu )
_____ )
_____ )
_____ )
Plaintiff(s), )
)
v. )
CDT Cook Dupage )
Transportation )
)
Defendant(s). Teamster )
Union
Local
727

1:18-cv-02498
Judge John J. Tharp
Magistrate: Judge Jeffrey Cole

Case Number: _____

**RECEIVED** AM

APR – 9 2018

THOMAS G. BRUTON
CLERK U.S. DISTRICT COURT

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is _____ Shaka L. Zulu _____ of the county of ___ Cook ___ in the state of ___ IL ___.

3. The defendant is ___ CDT Cook Dupage Transportation ___ whose street address is ___ 1200 W. Fulton Market ___, (city) Chicago (county) Cook (state) IL (ZIP) 60607 (Defendant's telephone number) (312) – 666· 6479

4. The plaintiff sought employment or was employed by the defendant at (street address)

1200 W. Fulton Market (city) Chicago (county) Cook (state) IL (ZIP code) 60607

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.    The plaintiff [**check one box**]

   (a)   ☐   was denied employment by the defendant.

   (b)   ☐   was hired and is still employed by the defendant.

   (c)   ☑   was employed but is no longer employed by the defendant.

6.    The defendant discriminated against the plaintiff on or about, or beginning on or about,
      (month) July_____, (day)_____, (year) 2010___.

7.1   (*Choose paragraph 7.1 or 7.2, do not complete both.*)

   (a)   The defendant is not a federal governmental agency, and the plaintiff
         [*check one box*] ☐*has*  ☑*has not* filed a charge or charges against the defendant

         asserting the acts of discrimination indicated in this complaint with any of the

         following government agencies:

         (i)   ☐ the United States Equal Employment Opportunity Commission, on or about

               (month)_____ (day)_____ (year)_____.

         (ii)  ☐  the Illinois Department of Human Rights, on or about

               (month)_____ (day)_____ (year)_____.

   (b)   If charges *were* filed with an agency indicated above, a copy of the charge is

         attached. ☐  Yes, ☐  No, **but plaintiff will file a copy of the charge within 14 days**.

      It is the policy of both the Equal Employment Opportunity Commission and the Illinois

      Department of Human Rights to cross-file with the other agency all charges received. The

      plaintiff has no reason to believe that this policy was not followed in this case.


7.2   The defendant is a federal governmental agency, and

   (a)   the plaintiff previously filed a Complaint of Employment Discrimination with the

      [If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month)_____ (day)_____ (year) _____

☐ No, did not file Complaint of Employment Discrimination

(b)     The plaintiff received a Final Agency Decision on (month)_____

(day) _____ (year) _____.

(c)     Attached is a copy of the

(i)  Complaint of Employment Discrimination,

☐ Yes     ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ Yes     ☐ N0, but a copy will be filed within 14 days.

8.     *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a)  ☑     the United States Equal Employment Opportunity Commission has not

issued a *Notice of Right to Sue.*

(b) ☐  the United States Equal Employment Opportunity Commission has issued

a *Notice of Right to Sue*, which was received by the plaintiff on

(month)_____ (day)_____ (year)_____ a copy of which

*Notice* is attached to this complaint.

9.     The defendant discriminated against the plaintiff because of the plaintiff's [***check only***

***those that apply***]:

(a)   ☑  Age (Age Discrimination Employment Act).

(b)   ☐  Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☑ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☑ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☑ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☑ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☑ Sex (Title VII of the Civil Rights Act of 1964)

10.    If the defendant is a state, county, municipal (city, town or village) or other local

governmental agency, plaintiff further alleges discrimination on the basis of race, color, or

national origin (42 U.S.C. § 1983).

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims

by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42

U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the

Rehabilitation Act, 29 U.S.C. § 791.

12.    The defendant [*check only those that apply*]
       (a) ☐ failed to hire the plaintiff.

       (b) ☑ terminated the plaintiff's employment.

       (c) ☑ failed to promote the plaintiff.

       (d) ☑ failed to reasonably accommodate the plaintiff's religion.

       (e) ☑ failed to reasonably accommodate the plaintiff's disabilities.

       (f) ☑ failed to stop harassment;

       (g) ☑ retaliated against the plaintiff because the plaintiff did something to assert rights
             protected by the laws identified in paragraphs 9 and 10 above;

       (h) ☐ other (specify): _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

13.    The facts supporting the plaintiff's claim of discrimination are as follows:

My religious apparel was banned. I was demoted after I filed a complaint against a coworker who assaulted me. I was forced to take more trips after my shift, when other drivers of different race, sex, gender left on time. I was terminated after unfounded curlesy complaints and 6 car accidents were used against me.

14.    **[AGE DISCRIMINATION ONLY]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.    The plaintiff demands that the case be tried by a jury. ☑ Yes ☐ No

16.    THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

   (a)    ☐ Direct the defendant to hire the plaintiff.

   (b)    ☐ Direct the defendant to re-employ the plaintiff.

   (c)    ☐ Direct the defendant to promote the plaintiff.

   (d)    ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

   (e)    ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

   (f)    ☑ Direct the defendant to (specify): Pay and back pay for pension. monetary compensation settlement.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g)  ☑  If available, grant the plaintiff appropriate injunctive relief, lost wages,
        liquidated/double damages, front pay, compensatory damages, punitive
        damages, prejudgment interest, post-judgment interest, and costs, including
        reasonable attorney fees and expert witness fees.

(h)  ☐  Grant such other relief as the Court may find appropriate.

_Shaka L. Zulu_
(Plaintiff's signature)

Shaka L. Zulu
(Plaintiff's name)

661 E. 69th St Apt 902
(Plaintiff's street address)

(City) Chicago        (State) IL   (ZIP) 60637

(Plaintiff's telephone number) (312) – 666. 6479

Date:   4/9/2018

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

SSA ODC
25th Fl
131 S Dearborn
Chicago, IL 60603

# 000005475     I=000000     0825 IP CIT

5471 2 MB 0.420



Shaka L Zulu
661 E 69 St Apt 902
Chicago, IL 60637



**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

### DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability and Disability Insurance Benefits |
| Shaka Lafarrakhan Zulu (Claimant) | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

The claimant filed an application for disability insurance benefits on July 28, 2014, alleging disability since July 24, 2014. This case is before me on a request for hearing dated April 10, 2015 (20 CFR 404.929 *et seq.*). The claimant appeared and testified at a hearing held on August 2, 2016 in Chicago, Illinois. Sheldon Slodki, M.D. and Ellen Rozenfeld, Psy.D., impartial medical experts, also appeared and testified at the hearing. Ms. Pamela Tucker was the vocational expert on the first day of the hearing, and Ms. Cheryl R. Hoiseth was the impartial vocational expert on the second day of the hearing. Ms. Catherine Kopko, a non-attorney claimant's representative represents the claimant.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2018. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After review of the entire record, I find that the claimant has been disabled from July 24, 2014, through the date of this decision. I also find that the insured status requirements of the Social Security Act were met as of the date disability is established.

### APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, or work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), I must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled.

Shaka Farafakhan Zulu (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)                                    Page 3 of 5

Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After consideration of the entire record, I make the following findings:

1.  **The claimant's date last insured is December 31, 2018.**

2.  **The claimant has not engaged in substantial gainful activity since July 24, 2014, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

3.  **The claimant has the following severe impairments: status/post lumbar hemi-laminectomy; Schizophrenia, paranoid type; and Bipolar disorder (20 CFR 404.1520(c)).**

These impairments result in more than minimal functional limitations on the claimant's ability to perform basic work-related activities.

The claimant also has the medically determinable impairments of HIV, visual loss, status post rib fracture, asthma/allergies, a remote history of drug and alcohol abuse and hepatitis B. However, as there is no evidence that these impairments result in more than minimal functional limitations, I find them non-severe. The records show that the claimant's HIV is asymptomatic. (Exhibit 52 F/6). Additionally, the records show that the claimant's vision loss is only mild and controlled with the conservative treatment of glasses. In terms of the claimant's allergies and asthma, the evidence shows that these conditions are also controlled. Further, the claimant only has a remote history of drug and alcohol abuse. (Exhibit 58F/7). Lastly, the evidence indicates that the claimant's hepatitis B is not limiting. (Exhibit 7F/6).

Finally, the records note that the claimant has lower extremity peripheral neuropathy. However, I find that this is a non-medically determinable impairment as there is no diagnosis of record supported by laboratory testing or accepted clinical findings.

4.  **The severity of the claimant's impairments meets the criteria of section 12.03 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1525).**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

According to the claimant, he stopped working due to his impairments, including mental disorders, diabetes, hypertension, and HIV. On a scale of not at all consistent, slightly consistent, moderately consistent, highly consistent, very highly consistent and extremely consistent, I find that the claimant's statements regarding the intensity, persistence, and limiting effects of symptoms are moderately consistent with the medical and other evidence of record, as there is substantial, longitudinal support in the record for his claims on his mental health issue. Additionally, the claimant's presentation at hearing supports significant limitation, as his testimony was difficult to direct and he did not remain focused on one topic, an observation shared by medical service providers in the record.

Regarding the opinion evidence of record, James McCreary, M.D. completed a medical source statement in January 2017, opining that the claimant's mental impairments result in extreme limitations maintaining attention and concentration for extended periods, making simple work-related decisions, working in coordination with or in proximity to others, completing a normal workday or workweek, responding to changes in a work setting, and tolerating normal levels of stress. (Exhibit 75F). Additionally, Dr. McCreary opined that the claimant has marked limitations in sustaining an ordinary routine and accepting instruction. On a scale of none, slight, moderate, good, great, very great and controlling weight, I ascribe great weight to the opinion of Dr. McCreary as that of a treating medical source. Additionally, the preponderance of facts arising from the evidence in the longitudinal record supports that the claimant is substantially limited in his ability to function mentally and thereby maintain full-time, competitive employment.

P.V. Kurani, M.D. also completed a medical source statement in July 2017, opining that the claimant is "totally disabled." (Exhibit 78). Although this opinion is on an issue ultimately reserved to the Commissioner of Social Security, I ascribe moderate weight to this opinion as that of a treating and examining medical source. Additionally, the opinion is consistent with the severity of the claimant's mental impairments shown in the longitudinal medical evidence.

Lastly, I considered the opinion evidence from State agency medical consultants. Darrell Snyder, Ph.D. and David Biscardi, Ph.D. opined that the claimant has no more than moderate mental limitations. (Exhibits 1A, 3A). Although considered as opinions of non-examining

Shaka Lafarrakhan Zulu (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)                                     Page 5 of 5



expert sources, I ascribe only slight weight to these opinions, as they are inconsistent with the facts arising from the evidence in the longitudinal record.

After considering the evidence of record as a whole, I find that the severity of the claimant's impairments meets the criteria of section 12.03. The "paragraph A" criteria are satisfied because the claimant has medically documented disorganized thinking and delusions. According to an October 2014 examination report, the claimant had loosening of association. (Exhibit 48F). Similarly, according to a June 2016 examination report, the claimant was tangential. (Exhibit 22F). Further, June and July 2016 treatment records contain observations of disorganized thinking and paranoid delusions. (Exhibit 22F).

The "paragraph B" criteria are also satisfied because the claimant's impairments cause moderate limitations in understanding, remembering, or applying information, marked limitations in interacting with others, marked limitations in concentrating, persisting, or maintaining pace, and marked limitations in adapting or managing oneself. These "paragraph B" findings are consistent with the opinion evidence of record discussed above from treating medical sources.

In sum, the severity of the claimant's impairments results in marked limitations and meets the criteria of listing 12.03. This finding is consistent with the longitudinal medical evidence of record and the opinion evidence from treating and examining medical sources.

**5.    The claimant has been under a disability as defined in the Social Security Act since July 24, 2014, the alleged onset date of disability (20 CFR 404.1520(d)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on July 28, 2014, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since July 24, 2014.

It is recommended that a determination be made concerning the appointment of a representative payee who can manage payments in the claimant's interest.

/s/ *Michael Logan*

Michael Logan
Administrative Law Judge

August 25, 2017
Date

# SOCIAL SECURITY ADMINISTRATION
## Office of Disability Adjudication and Review

## ORDER OF ADMINISTRATIVE LAW JUDGE

**IN THE CASE OF**

**CLAIM FOR**

Shaka Lafarrakhan Zulu
_____
(Claimant)

Period of Disability and Disability Insurance
Benefits

_____
(Wage Earner)

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
_____
(Social Security Number)

I approve the fee agreement between the claimant and his representative subject to the condition that the claim results in past-due benefits. My determination is limited to whether the fee agreement meets the statutory conditions for approval and is not otherwise excepted. I neither approve nor disapprove any other aspect of the agreement.

## YOU MAY REQUEST A REVIEW OF THIS ORDER AS INDICATED BELOW

**Fee Agreement Approval:** You may ask us to review the approval of the fee agreement. If so, write us within 15 days from the day you get this order. Tell us that you disagree with the approval of the agreement and give your reasons. Your representative also has 15 days to write us if he or she does not agree with the approval of the fee agreement. Send your request to this address:

> Sherry D. Thompson
> Regional Chief Administrative Law Judge
> SSA ODAR Regional Ofc
> Ste 2901
> 200 W Adams St
> Chicago, IL 60606-5234

**Fee Agreement Amount:** You may also ask for a review of the amount of the fee due to the representative under this approved fee agreement. If so, please write directly to me as the deciding Administrative Law Judge within 15 days of the day you are notified of the amount of the fee due to the representative. Your representative also has 15 days to write me if he/she does not agree with the fee amount under the approved agreement.

You should include the social security number(s) shown on this order on any papers that you send us.

/s/ _Michael Logan_
_____
Michael Logan
Administrative Law Judge

August 25, 2017
_____
Date

Form HA-L15 (03-2007)



TRANSMISSION VERIFICATION REPORT

```
TIME  : 09/05/2017 14:30
NAME  : HEAD&NECK COSMETIC
FAX   : 7732963800
TEL   : 7732965500
SER.# : BROH4V523573
```

```
DATE,TIME              09/05  14:28
FAX NO./NAME           917737524287
DURATION               00:01:21
PAGE(S)                04
RESULT                 OK
MODE                   STANDARD
                       ECM
```

Shaka Lafarrakhan Zulu (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)                    Page 3 of 3

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (877)402-0824. Its address is:

> Social Security
> 6338 S Cottage Grove A
> Chicago, IL 60637-3549

> Michael Logan
> Administrative Law Judge

Enclosures:
Form HA-L15 (Fee Agreement Approval)
Decision Rationale


cc:     Mary E. Kopko
        1525 E. 53rd, Ste. 709
        Chicago, IL 60615

TRANSMISSION VERIFICATION REPORT

```
TIME   : 09/05/2017 14:27
NAME   : HEAD&NECK COSMETIC
FAX    : 7732963800
TEL    : 7732965500
SER.#  : BROH4V523573
```

```
DATE,TIME          09/05  14:22
FAX NO./NAME       917737524287
DURATION           00:05:09
PAGE(S)            22
RESULT             OK
MODE               STANDARD
                   ECM
```

DEBRA ANN JONES
PARALEGAL

McBREEN & KOPKO
1925 EAST 53RD STREET
SUITE 709
CHICAGO, ILLINOIS 60615

(773) 752-2528
(773) 752-2636
FAX: (773) 752-4287

**LAW OFFICES**
**OF**
**FERN TREVINO**
**444 N. MICHIGAN AVE. • SUITE 2930 • CHICAGO, IL 60606**
**TELEPHONE (312) 630-4491 • FACSIMILE (312) 630-9281**

November 6, 2017

VIA HAND-DELIVERY
Shaka Zulu
312-772-1631

Dear Mr. Zulu:

This letter is to confirm that this firm will not represent you for reasons discussed during our consultation. Please keep in mind that since we are not representing you, we will not be monitoring changes in the law or your circumstances that may affect the strength of your matter.

Further, as discussed, statutes of limitations may affect your matter; therefore, we urge you to contact another lawyer immediately if you wish to pursue your matter. If you have a potential claim, your failure to follow up with another attorney may result in your matter being forever barred by specific time limitations on filing an administrative charge or complaint in court.

If you wish to follow up with another attorney, we suggest you contact the Chicago Bar Association's referral panel at (312) 554-2001 or check the attorney profiles on the National Employment Lawyers' Association website at NELA-Illinois.org.

Sincerely,

Elizabeth A. Gorge

- §1981  Race Discrimition → 4 years
                              from term.
- Dirksen Building
  219 S. Dearborn St.        pro se
  Chicago, IL 60604          ask to be
                             appointed an
                             attorney

- legal malpractice attorney

- Title VII → 300 days to get to EEOC

- EEOC
  1° 800 - 669 - 4000
  charge on file for you?
  status of charge?

→ Chicago Bar Assoc.
  312 - 554 - 2001



ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS

## REQUEST FOR INVESTIGATION

**Use this form to request an investigation of:**
**1) an Illinois lawyer;**
**2) a non-Illinois lawyer who has provided legal services in Illinois; or**
**3) a non-lawyer who you are claiming has engaged in the unauthorized practice of law in Illinois.**

**Return the completed form by mail or facsimile to:**

| | | |
|---|---|---|
| **ARDC** | | **ARDC** |
| **130 E. Randolph Dr., Ste. 1500** | | **3161 W. White Oaks Dr., Ste. 301** |
| **Chicago, IL 60601-6219** | **or** | **Springfield, IL 62704** |
| **Phone: (312) 565-2600 or (800) 826-8625** | | **Phone: (217) 546-3523 or (800) 252-8048** |
| **Fax: (312) 565-2320** | | **Fax: (217) 546-3785** |

**1.** Your name: _____

Street address: _____

City: _____ State: _____ Zip: _____

Home phone: _____ Work phone: _____ Cell phone: _____

E-mail address: _____

**2.** Name of lawyer/person you want to be investigated: _____

Name of law firm or business: _____

Street address: _____

City: _____ State: _____ Zip: _____

Phone: _____

E-mail address: _____

**3.** Have you previously contacted the ARDC regarding this matter? Yes _____ No _____

If yes, when and how did you contact us? _____

**4.** Did you employ the lawyer/person you are complaining about: Yes _____ No _____

**4a.** If you answered yes to question 4:

When did the employment start? _____

What was the fee agreement? _____

How much have you paid the lawyer/person to date? _____

*over*

**4b.** If you answered no to question 4 what is your connection to the lawyer/person? _____

_____

_____

**5.** If your request relates to a court case or other proceeding, please provide the following:

Name of court or agency: _____  .

Name of case: _____

Case number: _____

**6.** Please explain your complaint(s). Include important dates and names of witnesses and others involved. Use additional pages if necessary. Attach copies of documents that support your complaint, such as fee agreements, receipts, checks, letters and court papers.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Signature: _____ Date: _____



ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS

## REQUEST FOR INVESTIGATION

Use this form to request an investigation of:
1) an Illinois lawyer;
2) a non-Illinois lawyer who has provided legal services in Illinois; or
3) a non-lawyer who you are claiming has engaged in the unauthorized practice of law in Illinois.

Return the completed form by mail or facsimile to:

**ARDC**
**130 E. Randolph Dr., Ste. 1500**
**Chicago, IL 60601-6219**        **or**
**Phone: (312) 565-2600 or (800) 826-8625**
**Fax: (312) 565-2320**

**ARDC**
**3161 W. White Oaks Dr., Ste. 301**
**Springfield, IL 62704**
**Phone: (217) 546-3523 or (800) 252-8048**
**Fax: (217) 546-3785**

1.  Your name: _Shaka L. Zulu_

Street address: _6161 E 69th St #902_

City: _Chicago_        State: _IL_        Zip: _60637_

Home phone: ___        Work phone: ___        Cell phone: _312.722.9484_

E-mail address: ___

2.  Name of lawyer/person you want to be investigated: ___

Name of law firm or business: ___

Street address: ___

City: ___        State: ___        Zip: ___

Phone: ___

E-mail address: ___

3.  Have you previously contacted the ARDC regarding this matter?    Yes ___    No ___

If yes, when and how did you contact us? ___

4.  Did you employ the lawyer/person you are complaining about:    Yes ___    No ___

**4a.**   If you answered yes to question 4:

When did the employment start? ___

What was the fee agreement? ___

How much have you paid the lawyer/person to date? ___

*over*

**4b.** If you answered no to question 4 what is your connection to the lawyer/person? _____

_____

_____

**5.** If your request relates to a court case or other proceeding, please provide the following:

Name of court or agency: _____

Name of case: _____

Case number: _____

**6.** Please explain your complaint(s). Include important dates and names of witnesses and others involved. Use additional pages if necessary. Attach copies of documents that support your complaint, such as fee agreements, receipts, checks, letters and court papers.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Signature: _____ Date: _____



Thomas J. Ross
**Executive Director**

August 19, 2014

Matt Lundgren
Operations Manager
Cook Dupage Transportation
1200 W. Fulton
Chicago, Illinois 60607

Dear Mr. Lundgren:

This letter will confirm Maurice Sanders' e-mail regarding Cook Dupage Transportation driver, Shaka Zulu. (S.S.# \*\*\*-\*\*-7668). Effective immediately, this individual is not allowed to perform any safety sensitive function relating to the operation of a Pace vehicle or Pace service.

As was discussed, Pace has no interest in the manner in which Cook Dupage Transportaion performs its business or oversees its employees except as such matters impact upon the delivery of Pace mass transit service to the general public. Nor is Pace intent upon establishing any terms or conditions as to this individual's continued employment as Pace is not the employer.

Please provide Pace with written verification of Shaka Zulu's removal (termination) from Pace Paratransit service within seven (7) days.

If you have any questions or require any additional information, please feel free to contact me.

Sincerely,

Mary Ann Schultz

Mary Ann Schultz
Acting Department Manager
Safety, Training, and Security

C:   M. J. Metzger, Deputy Executive Director, Revenue Services
     T. Groeninger, Regional Manager, Paratransit/Vanpool
     R. Poland, Assistant Division Manager, Chicago ADA Services
     S. Williams, Division Manager, Chicago ADA Services
     M. Sanders, Manager, Quality Control/Compliance



The Local Advisory Council (LAC)

And

The Central Advisory Council (CAC)

Invites All Tenants

To the Tenant Services Meeting

On Wednesday, February 14, 2018

At

Wentworth Gardens

3770 S. Wentworth Ave


9:00 a.m. – Closed Session

10:00 a.m. – All Tenants Invited

(Mixed Finance, Scattered Sites, Housing Choice Voucher (Section 8), Project Based Voucher and Public Housing)

Chicago Housing Authority, HCV Staff, and other agencies will be in attendance.

Attend this meeting to voice your concerns and learn what changes, actions and/or activities are going on at HUD and the CHA.

The Local Advisory Council
The Central Advisory Council


The March 14, 2018 Tenant Service Meeting will be held at

CYC Building (Altgeld Garden Homes)

951 E. 131st Place



**SECURITY MEETING**



➢ Have concerns/issues regarding the Security firm where you reside?

➢ Do you have ideas to help improve the quality of the safety in your building or development?

➢ Want to learn about the Code of Conduct for Security and learn about Incident Reports?

The Central Advisory Council invites **ALL** Public Housing residents to attend the monthly Security meeting where you will get the opportunity to express those concerns with top managers of those security companies along with the Chicago Housing Authority's (CHA) Director of Safety and Security Anthony Powell. This month's meeting information is as follows:

When: Thursday, February 15, 2018
Where: 243 E. 32nd Street, Chicago, IL, 60616
Time: 1:00pm

# CHANGE.
## CHICAGO HOUSING AUTHORITY



EQUAL HOUSING
OPPORTUNITY

## EMPLOYMENT VERIFICATION

The Chicago Housing Authority is a federally funded housing agency assisting qualified families with rent subsidies. The above-named person has authorized the CHA or its agents, representatives and/or contractors to verify information regarding his/her employment. Please complete this form and return it to us as soon as possible. Thank you for your assistance.

To: _Cook Dupage Transportation Co_ Re: _Shaka Zulu_

Address: _1200 W. Fulton_ SSN: _343_ - _68_ - _1688_

City/State: _Chgo, IL. 60607_ _425 90 5889 CL S.S.A_

In authorization of this information, I have released you, your organization or others from any liability or damage, which may result from furnishing the information requested.

Signature X _Shaka Z Zulu_ Date _7/20/12_

1. Employed Since: _6 / 1 / 09_  2. Job Title: _Driver_

3. Salary, Base Pay Rate:$ _14.28_ per hour _____ hrs/week, or _____ hrs/month in yr.

4. Average hours worked at Base Pay Rate: _____ hrs/week, or _____ hrs/month in year.

5. Is this person likely to get Overtime? ☐ Yes ☐☐ No   If yes, Overtime Pay Rate $ _21.42_ hr.

6. Average number of Overtime hours expected during the next 12 months: ___ Hrs/ Month.

7. Any other compensation not listed above? Please specify for commissions, bonuses, tips, etc.?
For $ ___ per _____

8. Is pay received for vacation? ☐☑ Yes ☐☐ No If yes, number of days/year:
_10 days/year_

9. Total Base Pay Earnings for last 12 months: $ _28,074.87_

10. Total Overtime Earnings for the last 12 months: $ _8,059.58_

_Ben Kizer_ (312) 633-2745
(Signature)  PRINT NAME   Telephone #

PLEASE RETURN THIS FORM TO:
Woodlawn Community Development Corporation
Ada S. McKinley Apartments
661 E. 69th Street #109
Chicago, IL 60637

WARNING! Title 18, Section 1001 of the United States Code, states that a person who knowingly and willingly makes false fraudulent statements to any department or agency of the United States Government is guilty of a felony.

  **Choose us for your Mortgage Loan.**

  
Home   Contact   Logout
14522533 - SHAKA L ZULU
**Saturday, June 21, 2014**

Home   Access Accounts   Transfer Funds   Bill Payment   Account Services   Your Preferences   eDocuments

### ▽ Savings Accounts

| Suffix ⬆ | Description | Balance | Available |
|---|---|---|---|
| 🔎 Savings 0 | Primary Savings | $155.00 | 🔎 $150.00 |
| 🔎 Savings 2 | Secondary Savings | $0.03 | $0.03 |
| 🔎 Savings 50 | IRA Traditiona (REG) | $1,000.25 | $1,000.25 |

### ▽ Checking Accounts

| Suffix ⬆ | Description | Balance | Available |
|---|---|---|---|
| 🔎 Checking 20 | Checking Account | $944.64 | 🔎 $839.56 |

### ▽ Certificate Accounts

| Suffix ⬆ | Description | Balance | Date Purchased | Maturity Date | Dividend Rate | YTD Dividends |
|---|---|---|---|---|---|---|
| 🔎 Certificate 1 | Certificate (REG) | $1,021.19 | 03/29/2013 | 03/29/2018 | 1.785% Fixed | $7.51 |
| 🔎 Certificate 2 | Certificate | $1,003.41 | 02/21/2014 | 02/21/2018 | 1.243% Fixed | $3.41 |
| 🔎 Certificate 3 | Certificate | $5,009.80 | 04/14/2014 | 04/14/2019 | 1.490% Fixed | $9.80 |

### ▽ Loan Accounts

| Suffix ⬆ | Description | Due Date | Payment Amount | Balance | Available |
|---|---|---|---|---|---|
| 🔎 Loan 2 | USED AUTO | 07/31/2014 | $289.00 | $16,000.00 | $0.00 |

### ▽ Credit Card Accounts

| CardNumber ⬆ | Description | As Of | Due Date | Limit | Balance |
|---|---|---|---|---|---|
| 🔎 Credit Card xxxx 00266 | VISA PLATINUM | 06/02/2014 | 06/27/2014 | $3,500.00 | $0.00 |
| 🔎 Credit Card xxxx 14697 | VISA PLATINUM | 06/02/2014 | 06/27/2014 | $3,500.00 | $0.00 |
| 🔎 Credit Card xxxx 15686 | VISA PLATINUM | 06/09/2014 | 06/27/2014 | $5,000.00 | $3,268.32 |

**▶ Quick Transfer**

Amount: [        ]
From Account [            ⌄]
To Account: [            ⌄]

Transfer   Reset


We do business in accordance with the Federal Fair Housing Law and the Equal Credit Opportunity Act.

Unauthorized attempts to access, upload information, or deface this web site is strictly prohibited and are subject to prosecution under the Computer Fraud and Abuse Act of 1986 and Title 18 U.S.C. Sec. 1001 and 1030.

© 2007 Fiserv. All rights reserved.

Social Security Administration
Please read the instructions before completing this form.

Form Approved
OMB No. 0960-0527

| Name (Claimant) (Print or Type) SHAKA ZULU | Social Security Number 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 |
|---|---|
| Wage Earner (If Different) | Social Security Number |

## Part I  CLAIMANT'S APPOINTMENT OF REPRESENTATIVE

I appoint this individual, **KENYA BURNETT**

(Name and Address)

to act as my representative in connection with my claim(s) or asserted right(s) under:

☒ Title II (RSDI)  ☒ Title XVI (SSI)  ☐ Title XVIII (Medicare)  ☐ Title VIII (SVB)

This individual may, entirely in my place, make any request or give any notice; give or draw out evidence or information; get information; and receive any notice in connection with my pending claim(s) or asserted right(s).

☐ I authorize the Social Security Administration to release information about my pending claim(s) or asserted right(s) to designated associates who perform administrative duties (e.g. clerks), partners, and/or parties under contractual arrangements (e.g. copying services) for or with my representative.

☐ I appoint, or I now have, more than one representative. My principal representative is:

(Name of Principal Representative)

| Signature (Claimant) X | Address 661 E. 69th St #902 CHICAGO IL 60637 |
|---|---|
| Telephone Number (with Area Code) 773-947-8390 | Fax Number (with Area Code) | Date |

## Part II  REPRESENTATIVE'S ACCEPTANCE OF APPOINTMENT

I, **KENYA BURNETT**, hereby accept the above appointment. I certify that I have not been suspended or prohibited from practice before the Social Security Administration; that I am not disqualified from representing the claimant as a current or former officer or employee of the United States; and that I will not charge or collect any fee for the representation, even if a third party will pay the fee, unless it has been approved in accordance with the laws and rules referred to on the reverse side of the representative's copy of this form. If I decide not to charge or collect a fee for the representation, I will notify the Social Security Administration. (Completion of Part III satisfies this requirement.)

Check one: ☒ I am an attorney.  ☐ I am a non-attorney eligible for direct payment under SSA law.

☐ I am a non-attorney not eligible for direct payment.

I am now or have previously been disbarred or suspended from a court or bar to which I was previously admitted to practice as an attorney. ☐ YES  ☐ NO

I am now or have previously been disqualified from participating in or appearing before a Federal program or agency. ☐ YES  ☐ NO

**I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge.**

| Signature (Representative) | Address LAF 120 S. LASALLE # 900 CHICAGO IL 60603 |
|---|---|
| Telephone Number (with Area Code) 312-347-8350 | Fax Number (with Area Code) 312-612-1450 | Date |

## Part III  FEE ARRANGEMENT

(Select an option, sign and date this section.)

☐ **I am charging a fee and requesting direct payment** of the fee from withheld past-due benefits. (SSA must authorize the fee unless a regulatory exception applies.)

☐ **I am charging a fee but waiving direct payment** of the fee from withheld past-due benefits --I do not qualify for or do not request direct payment. (SSA must authorize the fee unless a regulatory exception applies.)

☐ **I am waiving fees and expenses from the claimant and any auxiliary beneficiaries** --By checking this block I certify that my fee will be paid by a third-party entity or government agency, and that the claimant and any auxiliary beneficiaries are free of all liability, directly or indirectly, in whole or in part, to pay any fee or expenses to me or anyone as a result of their claim(s) or asserted right(s). (SSA does not need to authorize the fee if a third-party entity or a government agency will pay from its funds the fee and any expenses for this appointment. Do not check this block if a third-party individual will pay the fee.)

☐ **I am waiving fees from any source** --I am waiving my right to charge and collect any fee, under sections 206 and 1631 (d)(2) of the Social Security Act. I release my client and any auxiliary beneficiaries from any obligations, contractual or otherwise, which may be owed to me for services provided in connection with their claim(s) or asserted right(s).

| Signature (Representative) | Date |
|---|---|

Form SSA-1696-U4 (07-2014) ef (07-2014)

**Toni Preckwinkle** • President
Cook County Board of Commissioners

**Jorge Ramirez** • Acting Chairman
Cook County Health and Hospitals System

**Ram Raju MD, MBA, FACS, FACHE** • CEO
Cook County Health and Hospitals System

**Thomas J. Dohm, MBA, FACHE** • Interim COO
Provident Hospital of Cook County

**Health & Hospitals System Board Members**
Commissioner Jerry Butler
David Carvalho
Quin R. Golden
Edward L. Michael
Rev. Calvin S. Morris, PhD
Luis Munoz, MD
Heather E. O'Donnell
Carmen Velasquez
Dorene P. Wiese, PhD



Legal Assistance Foundation of Metropolitan Chicago
120 S. Lasalle St., #900
Chicago, Illinois 60603
(312) 341-1070

10/13/15

To Whom it May Concern:

Mr. Shaka Zulu (DOB: 03/08/66) has been a patient in mental health services at this hospital since 1999. He met with his former mental health therapist, Ms. Michelle Kemp, MA for 16 years until March 2015. Mr. Zulu has been meeting with me at this hospital since Ms. Kemp's departure. He met with me on: 05/19/15, 06/16/15, 07/14/15, 08/11/15, 09/15/15 and today. He discussed his beliefs regarding his rights being violated by his family, previous employers and housing organizations, his history of sexual abuse and problems with family members. Mr. Zulu will continue meeting with me to address his progress towards his therapy goals, physical and emotional status, and other issues associated with his family, income, employment and housing situations.

If you have any questions I can be contacted at (312) 572-2416.

Sincerely,

Mason Kelly, LCSW, CADC

500 East 51st Street · Chicago, Illinois 60615 · Tel: (312) 572-2000 · TDD: (312) 572-1736

• Ambulatory & Community Health Network • Cermak Health Services • Cook County Department of Public Health John H. • • Stroger, Jr. Hospital • Oak Forest Health Center • Provident Hospital • Ruth M. Rothstein CORE Center •

"We Bring Health Care to Your Community"

**P.V. KURANI, M.D., S.C.**

2740 W. FOSTER AVENUE – SUITE 211

CHICAGO, IL 60625

24 HR. PHONE   773/561-7700

FAX 773 561-5624

7/14/17

RE; SHAKA LAFARRAKHAN ZULU

AKA: ERIC WASHINGTON

FORMAL COMPLAINT

OFFICE OF DISABILITY ADJUDICATION AND REVIEW BOARD

RESTITUTION CLAIM OF 20 YEARS OF UNPAID BENEFITS UNDER MENTAL DISABITY. 30 YEARS INCORRECT SOCIAL SECURITY CHILD BENEFITS AND 51 YEARS OF UNPAID BENEFITS UNDER PHYSICAL DISABILITES

TO WHOM THIS MAY CONCERN;

THIS IS TO STATE THAT SHAKA ZULU AKA ERIC WASHINGTON IS UNDER MY CARE SINCE 7/24/2015. HE STATED HE WAS BORN PREMATURLY WITH BIRTH DEFECT IN WHICH HE REQUIRED SPECIAL NEEDS AS A CHILD WITH EDUCATION AND PHYSICALLY. HE CLAIMS FROM THE AGE OF 8 TO 17 HE WAS A VICTIM OF SEXUAL ABUSE AND HAS BEEN DIAGNOSED WITH HIV 1993 AND TREATED IN 1978 AND HAS BEEN UNDER CARE OF HIV CLINIC FOR MEDICATIONS.

HE HAS ASTHMA, BRONCHITIS, CANCER OF NOSE, HYPERTENSION, SINUSITIS AND HIV.

HE IS BEING SEEN BY TWO PSYCHATRISTS , PSYCHOLOGIST, NEUROLOGIST , NEUROSURGEON,ENT,CARDIOLOGIST AND HIV SPECIALIST.

HE IS TOTALLY DISABLED AND HIS CASE SHOULD BE REVIEWED BY APPROPRIATE EXPERT AUTHORITIES FOR HIS MEDICAL AND MENTAL ISSUES AND ISSUES RELATED TO THE TIME AND EXTENT OF DISABILITY AND TO GET HIM ALL THE HELP HE CAN GET TO LIVE.

PLEASE REVIEW ALL HIS DOCUMENTS RECORDS TO SUPPORT HIS CLAIM .

THANK YOU

P V KURANI M.D.



**WOODLAWN COMMUNITY DEVELOPMENT CORPORATION**

March 19, 2018

## ATTENTION ALL ADA S. MCKINLEY APARTMENTS

**PLEASE BE ADVISED THAT THE GOLDEN DINER WILL BE CLOSED ON TUESDAY, MARCH 20, 2018 DUE TO THE PROPERTY BEING A POLLING PLACE FOR THE PRIMARY ELECTIONS. THERE WILL BE NO LUNCH SERVED.**

**THE GOLDEN DINER WILL REOPEN ON WEDNESDAY, MARCH 20, 2018.**

**SORRY FOR ANY INCONVENIECE THIS MAY CAUSE.**

**NEENA WILLIAMS, PROPERTY MANAGER WCDC-ADA S. MCKINLEY APARTMENTS**

 WOODLAWN COMMUNITY DEVELOPMENT CORPORATION

**MARCH 19, 2018**

## ATTENTION ALL RESIDENTS OF ADA S. MCKINLEY APARTMENTS

## IT HAS COME TO MANAGEMENT ATTENTION THAT RESIDENTS ARE DISPOSING LARGE BOXES INSIDE THE TRASH CHUTE.

## ALL LARGE BOXES MUST BE BROUGHT DOWN TO THE FIRST FLOOR AND DISPOSED INSIDE THE LARGE TRASH RECEPTACLES LOCATED IN THE REAR RESIDENT PARKING LOT OF THE PROPERTY.

## THANK YOU IN ADVANCE FOR YOUR COOPERATION!

**NEENA WILLIAMS**
**PROPERTY MANAGER**
**ADA S. MCKINLEY APARTMENTS**

*Committed to Serving Families and Building Communities*

Reg.#_____

## LANDLORD'S NOTICE AND DEMAND FOR RENT
## CHICAGO HOUSING AUTHORITY
## WOODLAWN COMMUNITY DEVELOPMENT CORPORATION

DEVELOPMENT NO. _SHo 38_          CLIENT NO. _7/5636p_

1. You occupy the described premises together with closets, laundry room, perambulator rooms and other rooms and spaces used in connection with said premises, for which the monthly rental payable in advance is:

$ ___148.00___

2. YOU ARE HEREBY NOTIFIED THAT THERE IS NOW DUE THE LANDLORD THE SUM OF $ _94.96_ _____ BEING RENT FOR ABOVE DESCRIBED PREMISES.

3. You are notified that payment of said sum so due is demanded of you. Unless payment is made on or before the expiration of 14 days after the date of service of the Notice, your lease of the premises will be terminated on the day following the expiration of said 14 days after service of this Notice upon you and you will be required to vacate said premises on that date. You have the right to make such reply as you wish and the right to a hearing in accordance with the Resident's Grievance Procedures. ONLY FULL PAYMENT OF THE RENT DEMANDED IN THIS NOTICE WITHIN THE SAID 14 DAYS WILL WAIVE THE LANDLORD'S RIGHT TO TERMINATE THE LEASE UNDER THIS NOTICE, UNLESS LANDLORD AGREES IN WRITING TO CONTINUE THE LEASE IN EXCHANGE FOR RECEIVING PARTIAL PAYMENT.

4. Resident shall have the right by appointment, prior to any hearing or trial to examine any relevant documents, records or regulations directly related to the eviction at the resident's development office.

Dated this ___7th___ day of ___February___ , A.D. 20 _18_

By: _____
Woodlawn Community Development Corp., as agent for
Chicago Housing Authority, Landlord

To: Shaka Zulu _____ AND
ALL UNKNOWN OCCUPANTS
661 E. 69th Street # 902
CHICAGO, ILLINOIS 606 37

The undersigned (hereinafter "Server") deposes and says that (s)he served the within Notice at the hour of _8:29_ A.M./P.M.

Dated this _February 7_ , 20 _18_

(1) _X_ PERSONAL SERVICE - By delivering a copy to the named resident _Shaka Zulu_ .

(2) ___ SUBSTITUTED SERVICE - By delivering a copy of the same to _____ , an adult, aged 18 or older, residing in the dwelling.

(3) ___ MAILED SERVICE - By sending a copy of the notice to the resident by certified or registered mail, with a returned receipt from the addressee.

(4) ___ POSTED SERVICE.

ADDITIONAL REMARKS:

| ATTEMPTED SERVICE | | |
|---|---|---|
| DATE | TIME | |
| 2/7/18 | 8:28 | AM/PM |
|  |  | AM/PM |
|  |  | AM/PM |

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this Certificate of Service are true and correct.

_____
Signature of Server

# The Cook County Sheriff's Office invites you to attend the



# Senior Citizen Safety Awareness & Crime Prevention Presentation

★ Learn How to Protect Yourself from Crime ★

★ Learn How to Avoid Identity Theft ★

★ Understand Con Games & Scams ★

## Tuesday, March 27
## 1:30 P.M.

## To register or receive more information,
### Contact Mr. Bridgemon at 773-447-3286

---

# Hosted at
# Ada Dennison-McKinley Senior Apartments
# 661 E. 69th Street in Chicago



# WOODLAWN COMMUNITY DEVELOPMENT CORPORATION



**ATTENTION ALL ADA S. MCKINLEY APARTMENT RESIDENTS**

**PLEASE BE ADVISED THAT A RESIDENT MEETING IS SCHEDULED FOR THURSDAY, MARCH 22, 2018 AT 3:30 PM TO DISCUSS THE REVISED CHA RESIDENTIAL PARKING PROCEDURES. THE MEETING WILL BE HELD INSIDE THE GOLDEN DINER.**


**THANK YOU,**

**NEENA WILLIAMS, PROPERTY MANAGER**
**WCDC/ADA S. MCKINLEY APARTMENTS – REGION 3**

# CHA RESIDENTIAL PARKING PROCEDURES



## BACKGROUND

A uniform parking policy will increase transparency and consistency across properties with onsite parking. The following information is part of an overall review of procedures issued to Property Management by the Chicago Housing Authority (CHA) Property Office Department.

Prior residential parking procedures were at the discretion of onsite property management with general CHA guidance provided via the Procedural Manual (*Chapter 2, Section 7, Part 3*) which states:

> *The Property Manager shall recommend appropriate parking procedures (including the use of decals/parking permits, towing, etc.) to the Portfolio Manager. Upon approval by Property Office, residents should receive notice of the procedures and allowed 30 days to comment. After the appropriate time has lapsed, Property Management shall enforce those procedures. All resident and non-resident vehicles should be parked in accordance with those procedures.*

## DETAILED PROCEDURES

1. Residents must obtain residential parking permits, through the Property Management Office, to legally park in CHA parking lots.
2. Only vehicles owned by leaseholders or other authorized adult household members will be allowed to register and receive parking permits. At no time will parking permits be issued for vehicles owned by non-household members.
3. The vehicle will be inspected before issuance of a parking permit.
4. The following documents will be required at time of registration:
     - Valid driver's license
     - Valid vehicle registration
     - Current city window stickers and state plate stickers
     - Proof of current automobile insurance coverage
5. Parking permits must be displayed in the front window of the vehicle and clearly visible at all times. The parking permit decal must be affixed, unobstructed, in the lower right- hand corner on the front passenger side of the windshield. The use of scotch tape to affix permit decal to windshield is prohibited. The parking permit (sticker) must be *permanently* affixed to the windshield.
6. Parking permits will be limited to one per household.
7. Property Management will distribute parking permits to all residents that have requested a permit and have successfully provided all documents required at time of registration as outlined under detailed procedure #4.
8. Renewal of parking permits will be completed at the time of recertification.
9. When requesting replacement parking permits, the leaseholder must sign an affidavit acknowledging that the old permit will be voided. Any vehicle displaying an invalid permit will be subject to towing at the owner's expense.
10. Use of parking spaces by Property Managers and/or Key CHA personnel will require approval by Property Office. CAC/LAC/PPM/Mgmt. decals will be available for distribution by Property Office, pending approval.
11. There will be designated parking spaces for car sharing programs at select CHA properties. See *Car Sharing Program* for more detail.
12. Parking permits and approved onsite parking will be free of charge.

### Size and Weight Limits
  - Trucks over five (5) tons, trailers, and boats will not be permitted in the parking lot at any time.
  - Motorcycles are considered as an automobile and must meet all parking criteria. There will be no additional parking permits issued for motorcycles if a permit for an automobile has already been issued for the household. Conversely, no additional parking permits will be issued for automobiles, if a permit for a motorcycle has already

been issued for the household.

### Enforcement and Towing
- The parking lot will be monitored by security and management staff.
- Non-operable vehicles or vehicles with flat tires will not be permitted to remain in the parking lot.
  - Owners will be issued a notice of violation. The vehicles must be repaired or removed within five (5) days of the notice or are subject to being towed at the owner's expense.
- Owners of vehicles without a valid City and/or State sticker will receive a notice of violation. If the situation is not rectified within thirty (30) days of the notice, the vehicle will be subject to towing at the owner's expense.
- In addition to the aforementioned violations, a vehicle may be towed from a CHA parking lot when:
  - The vehicle does not have a clearly visible and valid CHA residential parking permit.
  - The owner has been issued three (3) notices of violation for an expired permit and the owner has not responded within the timeframe allotted on the third notice.
- CHA contracted towing vendor(s) shall tow and release vehicles in accordance to their executed contracts. Contract details include specified guidelines for which towing unauthorized vehicle's is permissible.
- Towing vendors are authorized to patrol CHA parking lots 24hrs a day, seven days a week.
- Towing vendor information must be posted and must include:
  - Towing vendor name, address, city, state, zip code, phone number, hours of operation and the cost of tow service charges.
- Any leaseholder or authorized household member in violation of the aforementioned rules will be subject to termination of parking lot privileges in accordance with CHA Residential Lease Agreement Section 8 (k).
- CHA is sister agency of the City of Chicago; as such all vehicles on CHA lots are subject to City of Chicago parking and vehicle rules and regulations. Vehicles may also be booted or towed by the City of Chicago.

### Parking Lot Rules for Residents
- Parking will be available on a first come, first served basis. There will be no assigned parking spaces.
- Vehicles shall be parked within designated, striped areas, where applicable.
- Repairing of vehicles / washing vehicles in the parking lot will not be permitted at any time.
- Loitering and the consumption of alcohol or illegal substances will not be permitted in the parking lot.
- Children are not allowed to play in the parking lot.
- This policy does not cover off premises parking, however, the following is intended to be a universal understanding; residents, permitted staff and visitors are not allowed to obstruct exits and entrances, impede designated loading and un-loading zones and park in spaces designated for people with disabilities without a placard or designated disabled license plate.

### Visitor Parking
- Parking slots are solely for the convenience of residents, however, daily visitor parking may be permissible upon availability and will vary by development based on the availability of parking spaces. Visitor parking procedures will be established and enforced by Property Management and subject to approval by Property Office. The process of approval is as followed:
  - For CHA buildings that have underutilized spaces and/or the ratio of parking slots to residents are not severely disproportioned, residents will be given the option to seek a majority vote in either allowing or denying visitor parking. Final visitor parking procedures will be outlined in the "house rules" for each CHA site.

## PARKING FOR PEOPLE WITH DISABILITIES

- Proof of official State of Illinois documentation, including a placard or designated disabled license plate, must be provided for residents to utilize accessible designated parking spots
- Management shall follow the current reasonable accommodation procedures for all requests for designated parking accommodations.
- CHA's Housing Rights and Nondiscrimination Department (HRND) may also approve reasonable accommodations for parking for qualified individuals with disabilities.
- Management must obtain approval from the HRND before permitting the use of designated parking.
- Upon approval, a new ADA parking permit will be issued allowing access to designated parking spaces.

## CAR SHARING PROGRAM

CHA will allow car sharing companies to submit proposals outlining terms and conditions for parking their vehicles and installing signage in CHA owned parking lots.

- A maximum of two spaces may be designated for car sharing programs at any property.
- Each car sharing parking rental agreement shall be negotiated using current market parking rates.
- CHA Property Office will review proposals and coordinate with property management and building residents before agreements are executed.

**End of Document**



WOODLAWN COMMUNITY
DEVELOPMENT CORPORATION

March 5, 2018

Mr. Shaka Zulu
Client # 715636p
661 East 69th Street #902
Chicago, Illinois 60637

Re: Lease violation – Poor housekeeping

Dear Mr. Zulu,

Management has received the final results from the monthly general pest control extermination conducted in your unit on Monday, March 5, 2018. Your unit has been sited to have poor housekeeping (heavy grease build up on appliances). According to the FY 2015 Chicago Housing Authority Residential Lease Agreement, under Section 8, Resident's Obligations (d) which states: To keep the dwelling unit and other such areas as may be assigned to the resident for the family's exclusive use in a clean and safe condition, and to cure housekeeping violations within 30 calendar days of notice.

This letter serves as a written warning that your unit is currently in lease violation status. You will have thirty (30) days from the date of this letter to cure the lease violation. Management will conduct a follow up unit inspection on your unit on or after Thursday, April 5, 2018 to determine if the lease violation has been cured. Management will deliver 48 hour notice to you prior to your scheduled inspection date. Once management has conducted the unit inspection and it is determined the violation has not been cured, further legal actions may be taken.

Management has forwarded a Resident Service Coordination Program Referral and Disposition Report to the on site Resident Service Coordinator, Mr. Coleman Bridgemon who's office is located at 661 E. 69th Street, Unit 211. Mr. Bridgemon's contact number is (773) 955-9784- Office. Mr. Bridgemon will be making contact with you to see if there are any additional services that may be obtained to assist you to cure your lease violation.

Thank you for your cooperation,


Neena Williams
Property Manager
Ada S. McKinley Apartments

Cc: Tenant File

*Committed to Serving Families and Building Communities*



WOODLAWN COMMUNITY
DEVELOPMENT CORPORATION

**MARCH 6, 2018**

**ATTENTION ALL ADA S. MCKINLEY APARTMENT RESIDENTS,**

**THE PROPERTY MANAGEMENT STAFF OF ADA S. MCKINLEY
WOULD LIKE TO THANK YOU FOR YOUR COOPERATION DURING
THE MONTHLY EXTERMINATION INSPECTION CONDUCTED BY
VENDOR, PLATINUM PEST SOLUTIONS INC.**

**PLEASE BE ADVISED THAT A WCDC PERSONNEL WILL
ACCOMPANY THE ASSIGNED EXTERMINATION TECHNICIAN
MONTHLY TO CONDUCT A UNIT INSPECTION IN THE UNIT TO
INSPECT THE FOLLOWING:
SMOKE DETECTOR
HOUSEKEEPING
APPLIANCES
OUTLETS
INSPECT FOR EVIDENCE OF VERMIN (MICE/ROACHES)
BROKEN WINDOWS AND/OR MISSING WINDOW SCREENS
PAINTING/PLASTERING ISSUES
ANY OTHER OBSERVED DEFICIENCIES**

**THE FOLLOWING IS THE MONTHLY SCHEDULE FOR ADA S.
MCKINLEY APARTMENTS:**

**1ST THROUGH 5TH FLOORS – EXTERMINATION IS SCHEDULED ON
THE 3RD MONDAY OF EACH MONTH.**

**6TH THROUGH 9TH FLOORS – EXTERMINATION IS SCHEDULED ON
THE 1ST MONDAY OF EACH MONTH.**

**A 48 HOUR NOTICE WILL BE DISTRIBUTED TO NOTIFY YOU OF
ALL INSPECTIONS CONDUCTED ON THE PROPERTY.**

**NEENA WILLIAMS, PROPERTY MANAGER
WCDC/ADA S. MCKINLEY APARTMENTS**

*Committed to Serving Families and Building Communities*



WOODLAWN COMMUNITY
DEVELOPMENT CORPORATION

**March 22, 2018**

**To:  Ada S. McKinley Apartment Residents**

**From: Neena Williams, Property Manger**

**Subject: Annual Uniform Physical Condition Standards Inspection (UPCS)**

**Please be advised of the scheduled annual UPCS Inspections (Housekeeping/Unit) to be completed by contractor, US Inspection Group for the following dates listed below for each unit at Ada S. McKinley Apartments:**

| | |
|---|---|
| **THURSDAY, MARCH 29, 2018** | **8:00 AM TO 5:00 P.M.** |
| **FRIDAY, MARCH 30, 2018** | **8:00 AM TO 5:00 PM.** |

**Please make the necessary arrangement for someone to be home at the time of the scheduled inspection. If you are not present at the time of the inspection, management will use the emergency pass key to gain entry to your unit.**

**If there are any unauthorized locks on your door; they will be removed.**

**Thank you,**


**Neena Williams, Property Manager**
**WCDC – Ada S. McKinley Apartments – Region 3**
**661 E. 69th Street**
**(773) 955-9139 - Office**

*Committed to Serving Families and Building Communities*


WOODLAWN COMMUNITY
DEVELOPMENT CORPORATION

## APRIL 2, 2018

## ATTENTION ALL ADA S. MCKINLEY APARTMENTS RESIDENTS

PLEASE BE ADVISED THAT ON WEDNESDAY, APRIL 4, 2018 BETWEEN THE HOURS OF 7AM TO 12:00PM NOON, CONTRACTOR MID AMERICAN ELEVATOR INC WILL PERFORM THE ANNUAL ELEVATOR TEST ON BOTH ELEVATOR CARS AT 661 E. 69TH STREET.

DURING THE TEST, ONE ELEVATOR CAR WILL BE OUT OF SERVICE FOR A TWO HOUR TIME PERIOD. ONE CAR WILL BE LEFT IN SERVICE.

WE APOLOGIZE FOR ANY INCONVENIENCE THIS MAY CAUSE.

THANK YOU,

NEENA WILLIAMS
PROPERTY MANAGER
WCDC/ADA S. MCKINLEY APARTMENTS – REGION 3

*Committed to Serving Families and Building Communities*

**CHANGE.**
**CHICAGO HOUSING AUTHORITY**

DATE: February 21, 2018

# DEAR RESIDENT: 661 E. 69TH STREET #902

On **Friday, February 23, 2018** at **9:00 am**, a CHA private contractor, Environmental Design International Inc will come to your unit to complete a sample water testing in your kitchen and bathroom sinks of your unit.

Please make the necessary arrangements for someone to be home during this inspection. If you are not at home, the passkey will be used to gain entry.

_____Performing routine maintenance, making improvements or repairs

_____ Inspecting the unit

_____ Extermination

X_____ Other – Water sample testing

If you have any questions feel free to contact the management office at (773) 955-9139 Monday through Friday between the hours of 8:00am - 5:00pm.

Thank you
Management



**CHA**
CHICAGO HOUSING
AUTHORITY

**DATE: March 22, 2018**

**TO: <u>Shaka Zulu</u>**

**ADDRESS: 661 E. 69th Street**        **UNIT: <u>902</u>**

### <u>24-HOUR NOTICE OF INTENT TO ENTER THE RESIDENTIAL UNIT</u>

On <u>Tuesday, March 27, 2018</u>, between the hours of <u>9:00</u> **a**./p.m. and <u>12:00</u> a./**p.m**. a duly authorized agent, employee or contractor of the CHA will enter your residential unit for the purposes of:

_____Performing routine maintenance, making improvements or repairs

_____Inspecting the unit

_____Extermination

X_____Other (as indicated below) – Water sample testing

        If  there is no **ADULT**   at home management will use  **PASS-KEY**  to gain entrance to the unit.

Neena Williams, Property Manager
Ada S. McKinley Apartments
661 E. 69th Street
(773) 955-9139 - Office



WOODLAWN COMMUNITY
DEVELOPMENT CORPORATION

March 29, 2018

Mr. Shaka Zulu
Client # 715636p
661 East 69th Street #902
Chicago, Illinois 60637

Re: Lease Violation – Smoke detector found inoperable due to battery being removed by tenant

Dear Mr. Zulu,

On Thursday, March 29, 2018, management was informed by a CHA contractor of US Inspection Group who conducted the annual UPCS (Uniform Physical Condition Standard) inspection that the following violation was found:

<u>Living Room smoke detector found inoperable.</u>

Upon receiving findings, management dispatched maintenance to your unit to resolve the emergency issue. Management was informed that the smoke detector had been disconnected and the battery had been taken out of the unit.

Per the CHA FY 2015 Residential Lease Agreement under Section 8 – Resident Obligations (c ) states the following: To personally refrain from and to cause resident authorized members, pets/animals, guests and other persons under the residents' control to refrain from destroying, defacing, damaging, littering, or removing any part of the dwelling unit or development, and to notify the CHA of any damage in the dwelling unit.

Mr. Zulu, please be advised that at no time shall the smoke detector installed in your unit be disconnected from the wall nor the battery shall be removed. This letter serves as a written warning to you that your unit is in lease violation status. Property management will monitor your unit for the next thirty (30) days to ensure that you are in compliance.

Thank you for your cooperation,

Neena Williams,Property Manager
WCDC/Ada S. McKinley Apartments – Region 3

Cc: Tenant File

*Committed to Serving Families and Building Communities*



## Preventative Pest Management Inspection

**March 29, 2018**

**Attention Residents of 661 E. 69th Street 6th – 9th Floors: Your unit will receive preventative IPM Inspection on Monday, April 2, 2018 between 9am-4pm.**

Your unit will receive a preventive IPM inspection to ensure a pest free environment. Platinum Pest Solutions utilizes IPM or Integrated Pest Management. IPM has been identified by the National Pest Management Association as one of the most Eco friendly approaches to pest control. IPM is an easy three step process.

1. Inspect the home to determine pest activity, if any.
2. When activity is found or signs of activity are found, locate the true cause of the problem.
3. Treat in the most environmentally friendly way to alleviate the current problem and prevent future recurrence.

\*\*Platinum will also render a bed bug quick check on the beds and couches. If you know of any issues please inform your property manager or pest management professional\*\*

### Preparation for Service:

- **If you have any pest problems or would like a preventative treatment please be sure to conduct the unit preparation below before service date**
- Tenant may stay in unit during application.
- Please remove items from the kitchen cabinets underneath the sink.
- Everything can be returned to the cabinets after service.
- Please remove items from on top of refrigerator and stove to properly treat under and around appliances.
- Once product has dried (Approx. 30 minutes). You may wipe down counters and return items to their places.

### NOTE:

- If you have experienced any pest issues, be sure to inform our Pest Management Professional at time of service what and where the activity was seen. You may leave a note on the door if you will not be home for service.
- Please keep pets in bedroom during inspection.

### Frequently Asked Questions

- Do I have to be present for service?
  - o Maintenance will use access key for inspection if you are not available. We will document service and provide management with detailed report.
- Is this for bed bugs?
  - o This is a pro-active inspection for Rodents, Ants, Centipedes, Pill Bugs, Sow Bugs, Water Bugs, Roaches, Spiders ETC. We do not inspect for bed bugs.
- Where will they inspect?
  - o Platinum concentrates our inspection in the bathroom and the kitchen.

For further information please contact management at **(773) 955-9139**. Thank you for helping us keep a pest free environment.

Sincerely,
**Neena Williams, Property Manager**
**Ada S. McKinley Apartments**



WOODLAWN COMMUNITY
DEVELOPMENT CORPORATION

**APRIL 6, 2018**

**ATTENTION ALL ADA S. MCKINLEY APARTMENT RESIDENTS**

**IT HAS COME TO THE ATTENTION OF MANAGEMENT OF AN ILLEGAL DRUG ODOR WHICH IS COMING FROM VARIOUS FLOORS OF THE PROPERTY.**

**PER THE FY 2015 CHICAGO HOUSING AUTHORITY RESIDENTIAL LEASE AGREEMENT, SECTION 8 UNDER RESIDENT OBLIGATIONS (3) STATES:**

**ALL RESIDENT AUTHORIZED MEMBERS AND GUEST MUST REFRAIN FROM:**

**ENGAGING IN ANY DRUG RELATED CRIMINAL ACTIVITY ON OR OFF CHA PREMISES. FOR PURPOSES OF THE LEASE, THE TERM DRUG-RELATED CRIMINAL ACTIVITY MEANS THE ILLEGAL MANUFACTURE, SALE, DISTRIBUTION, USE, POSSESSION, STORAGE, SERVICE, DELIVER, OR CULTIVATION OF A CONTROLLED SUBSTANCE, INCLUDING MEDICAL MARIJUANA.**

**ANY UNIT FOUND IN VIOLATION, MANAGEMENT WILL SERVE A TERMINATION NOTICE AND FORWARD DOCUMENTATION TO THE CHICAGO HOUSING AUTHORITY LEGAL DEPARTMENT FOR EVICTION PROCEEDINGS.**

**THANK YOU,**

**NEENA WILLIAMS**
**PROPERTY MANAGER**
**WCDC/ADA S. MCKINLEY APARTMENTS – REGION 3**

*Committed to Serving Families and Building Communities*



The Local Advisory Council (LAC)

And

The Central Advisory Council (CAC)

Invites All Tenants

To the Tenant Services Meeting

On Wednesday, April 11, 2018

At

**Jane Adam Family Resource Center**

**1254 S. Loomis**

9:00 a.m. – Closed Session

10:00 a.m. – All Tenants Invited

(Mixed Finance, Scattered Sites, Housing Choice Voucher (Section 8), Project Based Voucher and Public Housing)

Chicago Housing Authority, HCV Staff, and other agencies will be in attendance.

Attend this meeting to voice your concerns and learn what changes, actions and/or activities are going on at HUD and the CHA.

The Local Advisory Council
The Central Advisory Council

**The May 9, 2018 Tenant Service Meeting will be held at**

**Trumbull Park District**

**2400 E. 105th Street**



**SECURITY MEETING**



➢ Have concerns/issues regarding the Security firm where you reside?
➢ Do you have ideas to help improve the quality of the safety in your building or development?
➢ Want to learn about the Code of Conduct for Security and learn about Incident Reports?

The Central Advisory Council invites **ALL** Public Housing residents to attend the monthly Security meeting where you will get the opportunity to express those concerns with top managers of those security companies along with the Chicago Housing Authority's (CHA) Director of Safety and Security Anthony Powell. This month's meeting information is as follows:

When: Thursday, April 12, 2018
Where: 243 E. 32nd Street, Chicago, IL, 60616
Time: 1:00pm

**LEGAL COUNCIL**
FOR HEALTH JUSTICE
17 N. State Street, Suite 900
Chicago, IL 60602

S SUBURBAN
IL 604
24 JAN '18
PM 3 1



US POSTAGE
$ 00.46
First-Class
Mailed From 60602
01/24/2018
032A 0061830764

Mr. Shaka Zulu
661 E 69th St. Apt 902
Chicago, IL 60637

60637-418327



US POSTAGE
$ 00.46
First-Class
Mailed From 60602
01/24/2018
032A 0061830764

Legal Council for Health Justice
17 N. State Street, Suite 900
Chicago, IL 60602

# LEGAL COUNCIL
## FOR HEALTH JUSTICE

January 24, 2018

Shaka Zulu
661 E 69th St
Apt 902
Chicago, IL 60637

Dear Mr. Zulu:

You contacted our agency because you believe you were discriminated against at work and unjustly fired. You previously had hired an attorney to represent you in some aspect of this case. It is our understanding that your previous attorney never filed a law suit in court on your behalf. Instead, it seems that he may have attempted to negotiate a settlement without success.

We are unable to offer you representation in your case. We recommend that you request copies of whatever documents and evidence that your previous attorney has on file from his time working with you. It may be important to understand what he did in your case. You will also want copies of the evidence you provided him in case you want to move forward with another attorney or on your own.

If you want to file a case alleging race based discrimination under Section 1981, you can do so in Federal Court. However, you have a limited amount of time to file. The statute of limitations on such a claim is four years.

I will be closing your case with our agency and wish you the best going forward.

Sincerely,

*Jessica Rhoades*

Jessica Rhoades
Attorney

# LEGAL COUNCIL
**FOR HEALTH JUSTICE**

January 24, 2018

Shaka Zulu
661 E 69th St
Chicago, IL 60637

Dear Mr. Zulu:

I'm sending you a brief client satisfaction survey, so that you can let us know what your experience with the Legal Council was like. I hope you can take a few minutes to complete and return it to us. Your feedback is valuable to us.

Best regards,

*J Rhoades*

Jessica Rhoades
Staff Attorney



# Client Satisfaction Survey

You recently contacted us for assistance. You worked with Jessica Rhoades at Legal Council for Health Justice. It is very important for us to find ways to serve our clients better and to know what we are doing well. Please take a moment to complete this survey. Your help is greatly appreciated.

## OUR SERVICE

| | Yes | Somewhat | No | N/A |
|---|---|---|---|---|
| When you most recently contacted us, were you able to talk to legal staff about your case promptly? | ☐ | ☐ | ☐ | ☐ |
| Did you find our staff courteous and respectful? | ☐ | ☐ | ☐ | ☐ |
| Was your legal advocate knowledgeable about your legal issue? | ☐ | ☐ | ☐ | ☐ |
| If you had to leave a phone message, did you get a reply in a reasonable amount of time? | ☐ | ☐ | ☐ | ☐ |
| Did your legal advocate keep you updated about your case? | ☐ | ☐ | ☐ | ☐ |
| Were your questions answered completely? | ☐ | ☐ | ☐ | ☐ |
| Was a reasonable timeline for your case explained to you? | ☐ | ☐ | ☐ | ☐ |
| Did your legal advocate do what they said they would do? | ☐ | ☐ | ☐ | ☐ |
| Were the shared client/advocate responsibilities fair? | ☐ | ☐ | ☐ | ☐ |
| Did you walk away with increased peace of mind or reassurance? | ☐ | ☐ | ☐ | ☐ |
| Do you feel your advocate really heard what you had to say? | ☐ | ☐ | ☐ | ☐ |
| Would you recommend our services to a friend in need of legal assistance? | ☐ | ☐ | ☐ | ☐ |

You can comment on your responses here: _____

_____

_____

_____

## OUTCOMES

| Getting legal services... | Yes | Somewhat | No | N/A |
|---|---|---|---|---|
| Helped me stay in medical care | ☐ | ☐ | ☐ | ☐ |
| Helped me keep or get income | ☐ | ☐ | ☐ | ☐ |
| Helped me keep or get health insurance (Medicaid, Medicare, etc.) | ☐ | ☐ | ☐ | ☐ |
| Stopped creditors from harassing me | ☐ | ☐ | ☐ | ☐ |
| Helped me keep my confidentiality from being violated further | ☐ | ☐ | ☐ | ☐ |
| Helped me reduce or manage debt | ☐ | ☐ | ☐ | ☐ |
| Helped me with information about keeping or getting a job | ☐ | ☐ | ☐ | ☐ |
| Helped me with knowledge about my rights | ☐ | ☐ | ☐ | ☐ |
| Helped me get a will, power of attorney, guardianship, or other estate planning | ☐ | ☐ | ☐ | ☐ |
| Helped me keep and/or get education services (special education, | ☐ | ☐ | ☐ | ☐ |

Continue on Back ⟶

**THRES OLDS**

HOME | HEALTH | HOPE

**Housing Administration**
4101 North Ravenswood Avenue
Chicago, Illinois 60613

Shaka L. Zulu

661 E. 69th St.

Apt 902

Chicago, IL 60637





# ADOVCATE IMMC OUTPATIENT BEHAVIORAL HEALTH SERVICES

# FAX

DATE: 02/21/2018
NUMBER OF PAGES INCLUDING
COVER SHEET: _____

**TO:**

**JONATHAN C GOLDMAN**

PHONE: _____
FAX PHONE:
**312.372.7076**
CC: _____

**FROM:**
**MARBELLA SALGADO**
**CASE MANAGER**

PHONE: **773/296-3133** EXT
FAX PHONE
**773/296-0532**

**REMARKS:** ☐ URGENT ☒ FOR YOUR REVIEW ☐ REPLY ASAP ☐ PLEASE COMMENT

THIS FAX IS INTENDED ONLY FOR USE BY THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FAX, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, PRINTING OR COPYING OF THIS FAX IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE IMMEDIATELY NOTIFY OUR OFFICE AT 773-296-3220 AND DESTROY THE FAX THAT YOU HAVE RECEIVED.

# RE: SHAKA L ZULU
# PHONE: 312.722.9484

# THRES|OLDS

**HOME   HEALTH   HOPE   Housing Waitlist Application**

## Step 1: Are You Eligible?

Thank you for your interest in Thresholds housing programs. Please note that all of the programs listed in this application have waitlists. **Thresholds does not provide immediate or emergency housing.** The waiting period varies by program, and can be extensive.

**Please also note that certain programs have closed their waitlists until further notice. If a program is marked "closed", you may not select it.**

Who qualifies for Thresholds housing programs[1]?
--Persons with disabilities (mental illness) AND very low income status

How many people can live in one Thresholds housing unit?
--Currently Thresholds can only house single adults - we do not have any family housing at this time.

## Step 2: Assembling the Application

**Required documents:** Submissions that do not have the following 2 items are incomplete and will be returned to the sender.

1) ___ **Completed application including valid MAILING ADDRESS**

2) ___ **Verification of Disability Form:** completed by a licensed mental health professional, signed by both the applicant and diagnosing clinician (see attached)

Requested documents: The following documents are not necessary to be placed on the waitlist. However, they would expedite the process, and will be required at the time of interview.

3) ___ Determination of Disability from Social Security Administration
4) ___ Birth Certificate
5) ___ State ID
6) ___ Social Security Card
7) ___ Medicaid Card

## Step 3: Submitting the Complete Application

Thresholds Housing Administration
ATTN: Kevin Knickerbocker
4101 N Ravenswood
Chicago, IL 60613

**Fax:** (773) 537-3751
**Email:** Housingadmin@thresholds.org

## Questions? Comments? Give us a call at (773) 572-5272

---

[1] Households that verify qualifications for all applicable preferences will receive assistance and be given priority over less qualified households. If you feel you qualify for a housing preference, please identify the preference(s) in the Household Composition and Characteristics section of the application. For households not claiming household preferences, screening will be conducted in the order the applications were received.



**THRES|OLDS**

HOME | HEALTH | HOPE

| |
|---|
| Thresholds Housing Administrator ONLY: date/time received |

# WAITLIST APPLICATION: THRESHOLDS HOUSING

APPLICANT NAME (Head of Household) _____

VALID MAILING ADDRESS_____
_____ *Street* _____ *apt. or unit #*

CITY, STATE, ZIP CODE_____

PRIMARY PHONE:_____ OTHER PHONE:_____ EMAIL:_____

---

Are you currently receiving mental health and/or case management services? (Y/N) _____

If yes, may we contact your provider? (Y/N) _____

Agency/Provider Name: _____

Contact Person:_____ PHONE: _____ EMAIL: _____

---

ALTERNATE CONTACT NAME: _____

PHONE: _____ OTHER PHONE:_____ EMAIL:_____

## How did you hear about Thresholds Housing?
*(please check all that apply)*
___ Family/Friend
___ Thresholds Case Manager / Social Worker
___ Other Social Service Agency -- Agency Name: _____
___ Community Program / Church
___ Email
___ Thresholds Website
___ Other (please specify): _____

**Required Program Preferences: all properties, excluding Ridge**
___persons with disabilities (mental illness)
___maximum income limit not to exceed 80% AMI

**Additional Requirements for Specific Programs:**
___persons who meet HUD homeless eligibility (see pages 6-7 for criteria and required documentation)
___persons with dual diagnosis (mental illness & substance abuse)
___persons who are Deaf or Hard of Hearing
___existing tenant transfer due to medical necessity
          (must provide documentation from medical provider) – **Current Tenant**

# Housing Options - Part 1

> **NOTE: You must make <u>at least</u> one housing selection on pages 2, 3 or 4 of this application.**

| **Group Homes** HUD subsidized, permanent supportive housing | • Each of the following programs has 8 private bedrooms, a shared kitchen and shared bathrooms, and a common area<br>• **Supported houses** have staff on site approximately 8 hrs/day<br>• **Supervised houses** have staff on site approximately 24 hrs/day |
|---|---|

| | Program Name | Area | Additional Eligibility Criteria | Staff | Select |
|---|---|---|---|---|---|
| **Chicago** | Calumet House | South side: Bronzeville | -- | Supported | ___ |
| | Islander House | South side: South Shore | -- | Supported | ___ |
| | Karlov House | West side: West Garfield Park | -- | Supported | ___ |
| | Keating House (Bill's Place) | South side: Archer Heights | -- | Supervised | ___ |
| | King House | South side: South Shore | -- | Supported | ___ |
| | Mazza House | South side: Woodlawn | -- | Supported | ___ |
| | Polk House | North side: Humboldt Park | -- | Supported | ___ |
| | Vincennes House | South side: Bronzeville | -- | Supervised | ___ |
| **N. Suburbs** | Salubrity (Church Street) | North Suburbs: Skokie, IL | *Chronic Homelessness (see pgs 7-8 for more info)* | Supported | ___ |
| **S. Suburbs** | Chicago Heights House | South Suburbs: Chicago Heights, IL | -- | Supported | ___ |
| **Kankakee** | Harbor West House | Kankakee, IL | -- | Supported | ___ |

| **Private SROs** HUD subsidized, permanent supportive housing | • Individual room including private bathroom and kitchenette<br>• These properties have 24-hour security desk clerk staff and on-site community support staff<br>• **NOTE:** Acceptance into program contingent on CHA approval at later date |
|---|---|

| NOTE: These programs have additional eligibility criteria - if you apply for one of these programs, please make sure your application includes the necessary documentation, listed here  | | |
|---|---|---|

| | Program Name | Area | Required Documents | Staff | Select |
|---|---|---|---|---|---|
| **Chicago** | Austin Apartments | West side: South Austin | • *Documentation of Homelessness (Homeless Letter)* | 24 hours/day | ___ |
| | Grais Apartments | North side: Rogers Park | • *Documentation of Substance Abuse (shown on the Verification of Disability form)*<br>• *Documentation of Chronic Homelessness (Homeless Letter, see pages 7-8 for more information)* | 24 hours/day | ___ |
| | Rowan Trees | South side: Englewood | • *Documentation of Substance Abuse (shown on the Verification of Disability form)*<br>• *Documentation of Chronic Homelessness (Homeless Letter, see pages 7-8 for more information)* | 24 hours/day | ___ |

Revised June 2017

# Housing Options - Part 2

NOTE: You must make **at least** one housing selection on pages 2, 3 or 4 of this application.

The following housing programs are only available for Williams or Colbert Class Members.
If you are not a **Williams or Colbert Class Member, you may not** select these programs.

| **Condominiums** Independent housing | • Permanent Supportive Housing for Williams or Colbert Class Members • Scattered site studio & 1-bedroom units • Accepting bridge subsidy or other tenant-based voucher | | | |
|---|---|---|---|---|
| | **Program Name** | **Areas** | **Additional Eligibility Criteria** | **Staff** | **Select** |
| **Chicago** | Condos - North | North side of Chicago | *Bridge subsidy or other tenant-based voucher* | None | ___ |
| | Condos - South | South side of Chicago | *Bridge subsidy or other tenant-based voucher* | None | ___ |
| | Condos - Southwest | Southwest side of Chicago | *Bridge subsidy or other tenant-based voucher* | None | ___ |

NOTE: Many of the following programs have waitlists that are closed. You may not select waitlists that are marked "CLOSED".

| **Studio & 1 Bedroom Apartments** HUD-subsidized, permanent supportive housing | • Private apartments • **Minimum staff** indicates Thresholds community support staff available by appointment • **Supported** houses have staff on site approximately 8 hours a day • **NOTE: Kiley Apartments** is part of the Thresholds Deaf Program - applicants must document deafness in order to be placed on this waitlist • **Attention:** Certain waitlists are closed until further notice - these programs may not be selected | | | |
|---|---|---|---|---|
| | **Program Name** | **Area** | **Additional Eligibility Criteria** | **Staff** | **Select** |
| **Chicago** | Carroll Street Apartments (1BR) | West side: East Garfield Park | -- | Minimum | **CLOSED** |
| | Casa De Troy (1BR) | South side: Marquette Park | *CHA (PRA) approval* | Minimum | **CLOSED** |
| | Dorchester Apartments (1BR) | South Side: Woodlawn | -- | Minimum | **CLOSED** |
| | Edgewater Shores (studio) | North side: Edgewater | *CHA (PRA) approval* | Minimum (with front desk clerk) | **CLOSED** |
| | Humboldt House (studio/1BR) | North side: Humboldt Park | *CHA (PRA) approval* | Supported | **CLOSED** |
| | Jacqueline Terrace (studio) | North side: Lakeview East | -- | Minimum | **CLOSED** |
| | Kiley Apartments (studio/1BR) | South side: Bronzeville | ***Deaf/hard of hearing.*** *CHA approval.* | Minimum | ___ |
| | Mount Greenwood (1BR) | Far South side: Mt.Greenwood | *CHA (PRA) approval* | Minimum | **CLOSED** |
| | Penn House (1BR) | North side: Old Town | -- | Minimum | **CLOSED** |

# Housing Options - Part 3

> **NOTE: You must make <u>at least</u> one housing selection on pages 2, 3 or 4 of this application.**

The following sites manage their waitlists independently from Thresholds Housing Administration. Your application will be forwarded to the program director at the selected location(s) and those program directors will contact you if further information is needed.

## Group Homes
Permanent supportive housing

- Private bedrooms with community living area, kitchen, and bathroom(s)
- **Please Note:** These units are NOT subsidized by HUD

| | Program Name | Area | Description | Additional Eligibility Criteria | Program Director | Select |
|---|---|---|---|---|---|---|
| Chicago | Becker House | North side: Rogers Park | 6 private bedrooms | *Deaf/hard of hearing* | Vicki Hall | ___ |
| | California House | North side: Ravenswood | 8 private bedrooms | *Deaf/hard of hearing* | Vicki Hall | ___ |
| | Kiley House | North side: Bronzeville | 9 private bedrooms | *Deaf/hard of hearing* | Vicki Hall | ___ |
| | Paxton House | South side: South Shore | 10 private bedrooms | *--* | Shirley Alexander | ___ |
| | Washtenaw House | North side: Ravenswood | 9 private bedrooms | *Deaf/hard of hearing* | Vicki Hall | ___ |
| N. Suburbs | Wright Terrace | N. Suburbs: Skokie, IL | 8 private bedrooms | *Income to afford rent $550/month* | Sean McNally | ___ |
| | Morton Grove House | N. Suburbs: Morton Grove, IL | 8 private bedrooms | *Income to afford rent $550/month* | Sean McNally | ___ |
| Kankakee | River House | Kankakee, IL | 4 private, 2 shared bedrooms | *Minimum LOCUS Score of 4* | Jeannette Tetreault | ___ |
| McHenry County | AMI House | Woodstock, IL | 7 private bedrooms | *Chronic homelessness* | Art Krzyzanowski | ___ |
| | Castle Road | Woodstock, IL | 6 private bedrooms | *Chronic homelessness* | Art Krzyzanowski | ___ |

## SRO/Shared Apt./Studio/1BR Apt.
Permanent supportive housing

- Unit size varies by property
- Shared apartments are intended for single adults, not family housing
- **NOTE:** The Hope Apartments waitlist is currently closed and may not be selected

| | Program Name | Area | Description | Additional Eligibility Criteria | Program Director | Select |
|---|---|---|---|---|---|---|
| Chicago | Coles House | South side: East Hyde Park | 8 studio apts, community kitchen | *3 psychiatric hospitalizations within the last year* | Shirley Alexander | ___ |
| | Woodlawn House | South side: Kenwood | 8 studio apts | *3 psychiatric hospitalizations within the last year* | Shirley Alexander | ___ |
| | Safe Haven (Lawson) | Downtown Chicago | 10 private bedrooms, community room and bathrooms | *Chronic Homelessness for individuals needing a low demand setting* | Paul Mireles | ___ |
| | Safe Haven (Downtown) | Downtown Chicago | 10 private bedrooms, community room and bathrooms | *Chronic Homelessness for individuals needing a low demand setting* | Paul Mireles | ___ |
| | Hope Apartments | North side: Rogers Park | 2-bedroom and studio apts | *--* | Sam Guardino | **CLOSED** |
| Suburbs | Old Orchard Apts. | North Suburbs: Skokie, IL | 4 2-bedroom apartments | *Income to afford rent $550/month* | Sean McNally | ___ |
| | Oak Park CILA | West Suburbs: Oak Park, IL | 2 shared 3-bedroom (3 male/3 female: 6 units) | *Minimum LOCUS score of 17* | Caroline Ladky | ___ |
| | Safe Haven (West Suburban) | West Suburbs: Melrose Park, IL | 15 private bedrooms, community kitchen, living room, and bathrooms | *Chronic Homelessness, connection to Suburban Cook County* | Caroline Ladky | ___ |
| | South Suburbs Apts. | South suburbs: Blue Island, IL | 2 2-bedroom and 1 studio | *--* | Natalie Marsh | ___ |
| | South Suburbs Blue Island Scattered Apts. | South suburbs: Blue Island, IL | 5 2-bedroom apts | *--* | Natalie Marsh | ___ |
| McHenry County | Rebecca Susan Apartments | Woodstock, IL | 6 2-bedroom apts | *Income to afford rent $450/month* | Art Krzyzanowski | ___ |

## HOUSEHOLD COMPOSITION AND CHARACTERISTICS

List the Head of Household and all other members who will be living in the unit. Give the relations of each family member to the head. At this time the largest household Thresholds can accommodate is 2 individuals (including children).

| | FULL NAME | RELATIONSHIP | BIRTH DATE | AGE | SEX (optional) | SOCIAL SECURITY # |
|---|---|---|---|---|---|---|
| **HEAD** | | | | | | |
| **SPOUSE / CO-HEAD** | | | | | | |
| DEPENDANT | | | | | | |
| OTHER | | | | | | |

**Is head of household or spouse disabled?** Y/N_____ *(for program & unit eligibility purposes)*

**Does your household have any special needs that warrant Reasonable Accommodation status?** Y/N_____

*If so, please describe (ex: applicant needs a wheelchair accessible unit):* _____
_____
_____

NOTE: to obtain Reasonable Accommodation status, the applicant may be required to submit a reasonable accommodation letter from a medical doctor that documents the medical necessity of the request.

**Do you have Medicaid?** Y/N_____ Medicaid RIN # _____

**Do you have any other kind of medical insurance?** Y/N_____ Provider:_____

**Are you a United States Citizen?** Y/N _____

If not, do you have eligible immigration status: Y/N _____

**Is anyone in your household subject to a state lifetime registration requirement for sex offenders?** Y/N _____

If so, provide name of household member: _____

**Have you or anyone in your household been convicted of a felony?** Y/N _____

If so, provide name of household member: _____

Date(s) & Offense(s): _____
_____
_____

**Have you or anyone in your household ever been evicted from a federally funded housing program for drug-related criminal activities?** Y/N_____

If so, provide name of household member: _____

Program name and date of eviction:_____

**Are you currently living in a subsidized housing unit?** Y/N _____

Name of complex: _____

Name of manager: _____

Manager's telephone number: _____

## HOUSEHOLD INCOME INFORMATION

List all current annual income, other sources, and/or assets for Head of Household and all other household members.

| NAME | SOURCE OF INCOME/TYPE OF INCOME | ANNUAL INCOME |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

### *FOR STATISTICAL PURPOSES ONLY (optional)*

Race - Head of Household:

___ American Indian/Alaskan Native American      ___ Asian/Pacific Islander

___ Black / African      ___ Native Hawaiian / Other Pacific Island      ___ White/Caucasian

Ethnicity - Head of Household: *(check one)*

___ Hispanic / Latino      ___ Non-Hispanic / Non-Latino

## APPLICANT CERTIFICATION

I/We certify that if selected to receive assistance, the unit I/we occupy will be my/our only residence. I/we understand that the above information is being collected to determine my/our eligibility. I/we authorize the owner /manager/PHA to verify all information provided on this application and to contact current or previous landlords. I/we authorize the owner/manager PHA to conduct a criminal background and sex offender registrations checks with the appropriate federal, state, or local agencies. I/we certify that the statements made in this application are true and complete to the best of my/our knowledge and belief. I/we understand that falsifying information on this document is punishable under federal law.

**HEAD OF HOUSEHOLD SIGNATURE**: _____ Date: _____

Spouse /Co-Head Signature: _____ Date: _____

---

**Thresholds Housing Staff ONLY:**

Processed by: _____ Date: _____
*(print)*

Signature: _____



## HUD SHP Homeless Eligibility Verification Form
(check applicable criteria)

NOTE: ALL SUPPORTING DOCUMENTATION MUST BE ATTACHED TO THIS APPLICATION

### Category One: All Program Model Types

_____ Person(s) is sleeping in a place not meant for human habitation
(e.g., streets, parked car, park, on the sidewalks or in an abandoned building)

_____ Person(s) is sleeping in an emergency shelter

_____ Person(s) is living in a transitional or supportive housing for homeless persons, but who originally came
the     streets or emergency shelter

_____ Person(s) is being discharged within 7 days from an institution in which they have been a resident no
more than 90 consecutive days and no subsequent residences have been identified and they lack the
resources and support networks needed to obtain housing. (having originally been on the street or in an
emergency shelter)

### Category Two: Transitional Housing (TH), Safe Haven (SH), Supportive Services Only (SSO)

_____ Person(s) who will imminently (within 14 days) lose their primary nighttime residence with no subsequent
residence, resources or support networks.

### Category Three: May not be used for any Thresholds programs

_____ Unaccompanied youth or families with children/youth who meet the homeless definition under another
federal statute and 3 additional criteria

### Category Four: All Program Model Types

_____ Those fleeing Domestic Violence who have no subsequent residence, resources or support networks

**Chronic Homeless:**

Person who meets the Chronic Homeless Definition: ____Yes ____No

**Chronic Homeless means**: - Homeless individual with a disability or family with an adult (or if no adult, a minor
HOH) head of household who:
- Lives in a place not meant for human habitation (ie: living on streets), in a safe haven, or in an
emergency shelter.
- Has been homeless continuously for at least 12 months OR on at least 4 separate occasions in the
last 3 years, where the combined occasions must total at least 12 months. (An occasion is defined by
a break of at least 7 nights not residing in shelter, safe haven or a place not meant for human
habitation.)

## Documenting HUD Homeless Eligibility
(Documentation must not be older than 120 days)

**Living on the Street:**
- Name of organization or outreach workers who have assisted: OR
- Address where general assistance checks are delivered: OR
- Other information that might verify person living on the street (i.e. case notes, documentation from mobile outreach worker)

**Emergency Shelter:**
- Written verification from shelter staff that the person has been living at the shelter (verification should be signed and dated by shelter personnel)

**Transitional Housing:**
- Written verification from transitional housing staff that individual has been residing in transitional housing (verification should be signed and dated by transitional housing staff) AND
- Verification that individual was living on the streets, emergency shelter or discharged from an institution prior to entering transitional housing

**Short Term Institutional Stay:**
- Verification from institution that individual resided in the institution for less than 90 days: AND
- Information about previous living condition

**(formal proceedings) Evicted:**
- Evidence of formal eviction proceedings that show individual was evicted within the week before receiving homeless assistance: AND
- Information about the individual prior to eviction (income, other efforts to obtain housing, why person would be living on the street or emergency shelter without assistance)

**(by family) Evicted:**
- Statement describing reason for eviction MUST be signed and dated by family member.

**(no formal proceedings) Evicted:**
- Individual MUST sign and date statement describing how they were forced out of a dwelling for reasons beyond their control (Program MUST make efforts to verify individual's statement and MUST have written verification describing their efforts)

**Long Term Institutional Care:**
- Verification from institution's staff that individual has been discharged within the week before receiving homeless assistance; AND
- Information about the individual (income, other efforts to obtain housing, why person would be living on the street/in emergency shelter without homeless assistance.

**Domestic Violence:**
- Written verification from individual that he/she is fleeing a domestic violence situation. If individual is unable to prepare a written statement, program may prepare statement and have individual sign and date.

**Documenting Chronic Homelessness**
- 3rd party documentation preferred: This may include documentation from shelter, institution (stays of less than 90 days), HMIS, Safe Haven
- Certification from outreach workers or other community contacts who have assisted the person(s) in recent past.
- For prior occasions – participant and/or staff should prepare a written statement describing stays on the street and/or in emergency shelters. Statement must include dates and locations about previous emergency shelter, street stays or stays in safe haven.

OMB Control # 2502-0581
Exp. (02/28/2019)

Supplemental and Optional Contact Information for HUD-Assisted Housing Applicants

## SUPPLEMENT TO APPLICATION FOR FEDERALLY ASSISTED HOUSING
This form is to be provided to each applicant for federally assisted housing

**Instructions: Optional Contact Person or Organization:** You have the right by law to include as part of your application for housing, the name, address, telephone number, and other relevant information of a family member, friend, or social, health, advocacy, or other organization. This contact information is for the purpose of identifying a person or organization that may be able to help in resolving any issues that may arise during your tenancy or to assist in providing any special care or services you may require. **You may update, remove, or change the information you provide on this form at any time.** You are not required to provide this contact information, but if you choose to do so, please include the relevant information on this form.

| | |
|---|---|
| **Applicant Name:** | |
| **Mailing Address:** | |
| **Telephone No:** | **Cell Phone No:** |
| **Name of Additional Contact Person or Organization:** | |
| **Address:** | |
| **Telephone No:** | **Cell Phone No:** |
| **E-Mail Address (if applicable):** | |
| **Relationship to Applicant:** | |

**Reason for Contact:** (Check all that apply)

- ☐ Emergency
- ☐ Unable to contact you
- ☐ Termination of rental assistance
- ☐ Eviction from unit
- ☐ Late payment of rent

- ☐ Assist with Recertification Process
- ☐ Change in lease terms
- ☐ Change in house rules
- ☐ Other: _____

**Commitment of Housing Authority or Owner:** If you are approved for housing, this information will be kept as part of your tenant file. If issues arise during your tenancy or if you require any services or special care, we may contact the person or organization you listed to assist in resolving the issues or in providing any services or special care to you.

**Confidentiality Statement:** The information provided on this form is confidential and will not be disclosed to anyone except as permitted by the applicant or applicable law.

**Legal Notification:** Section 644 of the Housing and Community Development Act of 1992 (Public Law 102-550, approved October 28, 1992) requires each applicant for federally assisted housing to be offered the option of providing information regarding an additional contact person or organization. By accepting the applicant's application, the housing provider agrees to comply with the non-discrimination and equal opportunity requirements of 24 CFR section 5.105, including the prohibitions on discrimination in admission to or participation in federally assisted housing programs on the basis of race, color, religion, national origin, sex, disability, and familial status under the Fair Housing Act, and the prohibition on age discrimination under the Age Discrimination Act of 1975.

☐ Check this box if you choose not to provide the contact information.

| | |
|---|---|
| **Signature of Applicant** | **Date** |

The information collection requirements contained in this form were submitted to the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501-3520). The public reporting burden is estimated at 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Section 644 of the Housing and Community Development Act of 1992 (42 U.S.C. 13604) imposed on HUD the obligation to require housing providers participating in HUD's assisted housing programs to provide any individual or family applying for occupancy in HUD-assisted housing with the option to include in the application for occupancy the name, address, telephone number, and other relevant information of a family member, friend, or person associated with a social, health, advocacy, or similar organization. The objective of providing such information is to facilitate contact by the housing provider with the person or organization identified by the tenant to assist in providing any delivery of services or special care to the tenant and assist with resolving any tenancy issues arising during the tenancy of such tenant. This supplemental application information is to be maintained by the housing provider and maintained as confidential information. Providing the information is basic to the operations of the HUD Assisted-Housing Program and is voluntary. It supports statutory requirements and program and management controls that prevent fraud, waste and mismanagement. In accordance with the Paperwork Reduction Act, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information, unless the collection displays a currently valid OMB control number.

**Privacy Statement:** Public Law 102-550, authorizes the Department of Housing and Urban Development (HUD) to collect all the information (except the Social Security Number (SSN)) which will be used by HUD to protect disbursement data from fraudulent actions.

Form HUD- 92006 (05/09)

# Verification of Disability

To:
_____
**Provider/Organization Name**

_____
**Street Address**    **City**    **State**    **Zip Code**

_____
**Phone**    **Fax**

From:
**Thresholds Housing Administration**
4101 N Ravenswood Ave
Chicago, IL 60613

**Phone: (773) 572-5272**
Fax: (773) 537-3751

**Subject:** Verification of Disability and Consent for Release of Information for the following applicant/participant of HUD-assisted and/or other Thresholds housing:

**Name** _____    **SS#** _____

The above person has applied for housing assistance under a program of HUD and/or other Thresholds housing. Thresholds and HUD require the housing owner to verify all information that is used in determining this person's eligibility or level of benefits. We ask your cooperation in providing the following information and **returning it to Thresholds Housing Administration listed at the top of the page**. Your prompt response will help to ensure timely processing of the application for assistance. The applicant/tenant has consented to this release of information below.

For each numbered item below, mark an "X" in the applicable box that accurately describes the person listed above.

YES   NO

1. ___  ___  Has a disability, as defined in 42 U.S.C. 423, which means, has an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months; or in the case of an individual who has attained the age of 55 and is blind, has an inability by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he/she has previously engaged with some regularity and over a substantial period of time. For the purposes of this definition, the term blindness, as defined in section 416(i)(1) of this title, means central vision acuity of 20/200 or less in the better eye with use of a correcting lens. An eye which is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees shall be considered for the purposes of this paragraph as having a central visual acuity of 20/200 or less.

2. ___  ___  Has a physical, mental, or emotional impairment that is expected to be of long-continued and indefinite duration, substantially impedes his/her ability to live independently; and is of such a nature that the ability to live independently could be improved by more suitable housing conditions.

3. ___  ___  Has a developmental disability as defined in Section 102(7) of the Developmental Disabilities Assistance and Bill of Rights Act 42 U.S.C. 6001(8)), i.e., a person with a severe chronic disability that is attributable to a mental or physical impairment or combination of mental and physical impairments; is manifested before the person attains age 22; is likely to continue indefinitely; results in substantial functional limitation in three or more of the following areas of major life activity: 1) self-care, 2) receptive and expressive language, 3) learning, 4) mobility, 5) self-direction, 6) capacity for independent living, and 7) economic self-sufficiency; and reflects the person's need for a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services that are of lifelong or extended duration and are individually planned and coordinated.

4. ___  ___  Is a person whose disability is based solely on drug or alcohol dependence (has no other disability which meets the above definition).

Diagnosis (1) _____    Diagnosis: (2) _____

Diagnosis: (3) _____    Diagnosis; (4) _____

_____
Print Name and Credential of Person Supplying this Information    Position Title and/or Organization Name

_____
Signature    Date

**Applicant/Resident Consent for Release of Information:** I hereby authorize the release of the requested information. Information obtained under this consent is limited to information that is no older than 12 months. There are circumstances that would require the owner to verify information that is up to 5 years old, which would be authorized by me on a separate consent attached to a copy of this consent.

_____
Signature    Date

**PENALTIES FOR MISUSING THIS CONSENT:** Title 18, Section 1001 of the U.S. Code states that a person is guilty of a felony for knowingly and willingly making false or fraudulent statements to any department of the United States Government. HUD and any owner (or any employee of HUD or the owner) may be subject to penalties for unauthorized disclosures or improper uses of information collected based on the consent form. Use of the information collected based on this verification form is restricted to the purposes cited above. Any person who knowingly or willingly requests, obtains, or discloses any information under false pretenses concerning an applicant or participant may be subject to a misdemeanor and fined not more than $5,000. Any applicant or participant affected by negligent disclosure of information may bring civil action for damages and seek other relief, as may be appropriate, against the officer or employee of HUD or the owner responsible for the unauthorized disclosure or improper use. Penalty provisions for misusing the social security number are contained in the Social Security Act at 42 U.S.C. 208a (6), (7) and (8). Violation of these provisions are cited as violations of 42 U.S.C. 408a (6), (7) and (8).

 **AT&T**

P.O. Box 5093
Carol Stream, IL  60197-5093

First-Class
**Mail**
U.S. Postage
Paid
AT&T

5991 3 72 24667 1 AB 0 408 DX

SHAKA ZULU
661 E 69TH ST
CHICAGO IL  60637-4175



PO BOX 5093
CAROL STREAM IL 60197-5093

01/27/2018

SHAKA ZULU
661 E 69TH
CHICAGO,IL 60637 4175

Dear SHAKA ZULU:

Thank you for applying for AT&T communications, entertainment, or Digital Life services.

As of 09/19/2017, your AT&T credit score was: 635.

AT&T utilizes a proprietary credit rating system that creates a score based on information derived from your credit history as supplied by the consumer reporting agency listed below. Your AT&T credit score is unique to AT&T and is not related to scores commonly supplied by credit reporting agencies. Your credit score can change and credit scores range from 001 to 999. The credit score values are established based upon comparative analyses of repayment histories of large numbers of customers.

Key factors affecting your AT&T credit score include:
  •      No factors were provided by consumer reporting agency

Based in part on an assessment of your credit history, we imposed certain conditions or restrictions on your service request, which may have included limiting and/or denying the purchase of products and/or services, or requiring a deposit or advance payment.

In making our decision, we received information from the credit bureau listed below. The credit bureau did not make the above decision and is unable to provide you the specific reasons for the above decision.

Under the Fair Credit Reporting Act, you have the right to obtain a copy of your credit report at no charge if you contact the credit bureau listed below within sixty (60) days from the date of this letter. You also have the right under the Federal Credit Reporting Act to dispute with the credit bureau the accuracy or completeness of any information in the report.

Equifax
PO Box 740241
Atlanta, GA 30374-0241
800-685-1111

Exchange Service Center
PO Box 105161
Atlanta, GA 30348-5398
866-343-2821

Once again, thank you for applying for AT&T communications or entertainment services; we appreciate the opportunity to serve you.

Sincerely,

AT&T Mobility

Mobility Letter 58 - WLS High

Subsidiaries and affiliates of AT&T Inc. provide products and services under the AT&T brand. AT&T, the AT&T logo and all other AT&T marks contained herein are trademarks of AT&T Intellectual Property and/or AT&T affiliated companies. © 2010 AT&T Intellectual Property. All rights reserved.

5991.003.024667.01.01.0000000 NNNNNNNN 004333.049377